UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **ALISA A. JONES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action Number |
| | ) 7:16-cv-849-AKK |
| **CAROLYN W. COLVIN, ACTNG COMMISSIONER OF SOCIAL SECURITY,** | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | |

## MEMORANDUM OPINION

Alisa A. Jones brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct and legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I.   Procedural History

Jones filed her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on May 17, 2013, alleging a disability onset date of April 29, 2012 due to back pain, a neck injury, COPD, restless leg

1

syndrome, and depression. (R. 141, 173). After the SSA denied her application, Jones requested a hearing before an ALJ. (R. 98–100). The ALJ subsequently denied Jones' claim, (R. 8), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1–3). Jones then filed this action pursuant to § 205(g) of the act, 42 U.S.C. § 405(g). Doc. 1.

## II.     Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

  (2)  whether the claimant has a severe impairment;

  (3)  whether the impairment meets or equals one listed by the Secretary;

  (4)  whether the claimant is unable to perform his or her past work; and

  (5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that the work Jones engaged in after the alleged onset date of her disability did not constitute gainful employment. Therefore, the ALJ found that Jones had not engaged in substantial gainful activity since her alleged onset date and met the criteria for Step One. (R. 13). Next, the ALJ acknowledged that Jones' severe impairments of "degenerative disc disease of the lumbar spine; bilateral osteoarthritis of the hips; arthralgias, multiple sites, and arthropathy; mood disorder; and chronic alcohol abuse and narcotic dependence" met the

requirements of Step Two. (R. 15). In this step, the ALJ acknowledged Jones' impairments of "degenerative disc disease of the cervical spine; benign essential hypertension; obesity; chronic obstructive pulmonary disease with history of tobacco abuse; abnormal elevated blood sugars, . . . ; history of malignant colon polyp, . . . ; helicobacter pylon infection; restless leg syndrome; decreased visual acuity; and sinusitis." (R. 14–15). However, the ALJ found that these impairments were either not supported by the record or were mostly nonsymptomatic. (*Id.*). The ALJ then proceeded to the next step and found that Jones did not satisfy Step Three because she "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 15) (internal citations omitted). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that Jones has the residual functional capacity ("RFC") to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Jones] is able to lift/carry and push/pull twenty pounds occasionally, and ten pounds frequently. [Jones] is able to sit, stand, and walk six hours each out of an eight-hour workday. However, [Jones] would need the ability to alternate sitting and standing at will. [Jones] must avoid climbing ladders, ropes and scaffolds; kneeling and crawling. . . . Mentally, [Jones] is limited to performing simple, routine and repetitive tasks and making simple, work-related decisions.

(R. 17). In light of Jones' RFC and the testimony of a vocational expert ("VE"), the ALJ determined that Jones could not perform any past relevant work. (R. 24).

5

Lastly, in Step Five, the ALJ considered Jones' age, education, work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that [Jones] can perform." (R. 24). Therefore, the ALJ found that Jones "has not been under a disability, as defined in the Social Security Act, from April 29, 2012 . . . ." (R. 25).

## V.     Analysis

The crux of Jones' argument is that the ALJ failed to consider the opinion of Dr. Shepherd A. Odom, M.D., and that this failure led to "an RFC finding that does not accurately describe all of her limitations." Doc. 11 at 3. For the reasons below, the court rejects her contention and affirms the ALJ's decision.

1. *The ALJ did not err by purportedly failing to give weight to the opinion of the treating physician in the RFC*

Jones' only contention of error is that the ALJ failed to give proper weight to Dr. Odom's opinion in determining Jones' RFC. Doc. 11 at 4. In evaluating the medical record, the ALJ is "required to state with particularity the weight he gave to different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Jones is correct that the opinion of a treating physician must generally be afforded substantial weight. However, the ALJ is permitted to disregard that opinion when: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the

doctor's own medical records. . ." *Phillips v. Barnhardt,* 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The court finds that the ALJ did not err in affording Dr. Odom's opinion little weight and that the ALJ provided his reasons for doing so.

The ALJ first noted that Jones began treatment with Dr. Odom in December 2012 and that Dr. Odom initially diagnosed Jones with chest wall and thoracic pain. (R. 19). Subsequent appointments saw Jones diagnosed with hypertension, restless leg syndrome, tinea corporis, cervical and lumbar degenerative disc disease, arthritis of the hips and shoulders, non-insulin dependent diabetes mellitus, and anxiety and depression. (*Id.*). Over the next six months, Jones also presented to Dr. Odom with complaints of worsening back pain, and, after Jones reported her attempt to obtain disability benefits, she ultimately received a diagnosis of "degenerative disc disease of the lumbar spine." (R. 21). Significantly, throughout this period, Jones only received conservative treatment.

In addition to Dr. Odom's treatment notes, the ALJ discussed the medical opinion Dr. Odom provided regarding Jones' ability to do physical activities as part of a form he filled out for Jones' disability application. (R. 241). Within that opinion, Dr. Odom noted that Jones had diagnoses of COPD and degenerative disc disease of the cervical and lumbar spine, and that Jones could not walk without rest, could continuously sit 1-2 hours, stand 20 minutes, and needed a job that

permitted shifting positions at will, with unscheduled work breaks 1-2 times per day. (*Id*.). Dr. Odom also placed limitations on her ability to twist, stoop, crouch, and climb stairs, and indicated that Jones would require a cane or other assistive device for ambulation.[1] (R. 243).

The ALJ then examined Dr. Odom's treatment notes in the context of the full medical record and found that Dr. Odom's treatment notes and the rest of the medical sources of the record belied Dr. Odom's claim. (R. 23). First, the ALJ pointed out that Dr. Odom diagnosed Jones with COPD, even though it is not listed as a diagnosis in his treatment records, *see* (R. 384), and that no other examining or consultative physician has noted any pulmonary findings that would support a diagnosis of COPD,[2] (R. 57, 365–70, 382–84). Second, the ALJ noted that Dr. Odom diagnosed Jones with degenerative disc disease of the cervical spine without the benefit of any cervical x-rays, (R. 14), and that no medical evidence supported this finding. As the ALJ put it, there was an absence of "x-rays, magnetic

---

[1] Dr. Odom's report also indicates a "poor prognosis." (R. 243). However, this falls short of constituting an opinion supporting a finding that Jones is disabled. At most, Dr. Odom's note is "a prediction about [Jones'] future condition," *see Moody v. Barnhart*, 295 F. Supp. 2d 1278, 1285 (N.D. Ala. 2003), and as such does not support a finding of a current disability. Furthermore, this court's review of the record finds that it is devoid of any evidence that Dr. Odom or any other treating physician considered Jones disabled as a result of her impairments, much less that their opinions conflicted with the ALJ's decision. *See generally Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983).

[2] Jones argues that Dr. Alan M. Babb diagnosed her COPD. Doc. 11 at 10. This misstates the record. At Jones' consultative appointment, Dr. Babb noted that Jones was ill-prepared to discuss her case and found that Jones' chest was clear and there were no pulmonary findings. In his impressions, Dr. Babb included COPD and several other disorders. (R. 253). However, the only diagnoses he ultimately made were "chronic back pain, obesity, and [hypertension]." (R. 57).

resonance imaging, or computed tomography scan[s] evidencing degenerative disc disease or herniated disc in her spine; and no referrals for physical therapy or surgical evaluation." (R. 21, 23). In addition to the lack of x-ray evidence, the ALJ also discredited Dr. Odom's opinion of severe degenerative disc disease because it conflicted with Jones' own function assessment that she "drives, performs housework, shops, feeds pets, [and] sometimes goes to the lake . . . ." (R. 22).

Third, with respect to the complaints of bilateral osteoarthritis and Jones' difficulties ambulating, while Dr. Odom provided x-ray evidence of worsening arthritic changes to Jones' hips, (R. 22), the ALJ discredited Dr. Odom's findings because during a consultative examination with Dr. Alan M. Babb, Jones showed "normal range of motion in the upper and lower extremities, specifically including hips, with no gait disturbance, and no use of assistive device." (R. 22). The ALJ also pointed to Jones' treatment records from the Health Department in November 2013, which indicated that Jones "exhibited normal musculoskeletal system and no motor or sensory abnormalities." (R. 22). The ALJ did note that the Health Department records do show diagnoses of arthralgias and arthropathy.[3]

In short, the record demonstrates that, consistent with the law, the ALJ discussed the inconsistencies between Dr. Odom's treatment records and the

---

[3] The ALJ took into consideration the arthritic diagnoses in the RFC determination. However, based on Jones' functional reports and the record evidence itself, the ALJ found that these impairments are not incapacitating. (R. 22).

9

medical opinion Dr. Odom provided before ultimately articulating the reasons why he afforded little weight to that opinion. *See Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 534 (11th Cir. 2014) (No error where the ALJ "articulated with particularity the weight he gave to all of the physician assessments in the medical record" and substantial evidence supported the ALJ's weighting of the opinion evidence.); *see also Hensley v. Colvin*, 89 F. Supp. 3d 1323 (M.D. Fla. 2015) (ALJ is required to state that reasons why a medical opinion is rejected). Based on the court's review of the record, this determination is consistent with the medical record in evidence. In addition to the discrepancies the ALJ noted between the medical record and Dr. Odom's opinion, the court notes that Dr. Odom's opinion of the severity of Jones' limitations is also contradicted by Jones' own indication that she had the ability to walk a quarter of a mile prior to needing rest, (R. 204), which directly contradicts Dr. Odom's opinion that Jones could not walk a single city block without needing to rest (R. 241). Because the ALJ did not err in providing Dr. Odom's opinion little weight, the court rejects Jones' related contention that the RFC is not based on substantial evidence. *Beech v. Apfel,* 100 F. Supp. 2d 1323, 1330 (S.D. Ala. 2000) (The "determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments."); *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th

Cir. 1997). Accordingly, the court affirms the ALJ's decision to afford little weight to Dr. Odom's opinion and finds that the ALJ's RFC determination was based on substantial evidence.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Jones is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 16th day of February, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE